**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICKY BREEZE MOOREFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-cv-266 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| DR. MOHAMMAD NAJI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

In the operative Second Amended Complaint, Plaintiff Ricky Breeze Moorefield, a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") at SCI Houtzdale, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Mohammed Naji ("Dr. Naji"), asserting the violation of his rights under the Eighth Amendment based on the medical treatment he received/failed to receive at SCI Houtzdale for vasculitis. Pending before the Court is a Motion for Summary Judgment filed by Dr. Naji. (ECF No. 84.)

## I.    Procedural History

Plaintiff originated this case in October 2023 in the United States District Court for the Middle District of Pennsylvania (ECF No. 1) that was later transferred to this Court. After several deficiencies were cured, the Complaint was filed on December 7, 2023. Plaintiff's Complaint asserted claims against Dr. Naji and SCI-Houtzdale Medical Department. (ECF Nos. 7, 17.) Dr. Naji filed an Answer (ECF No. 40) and SCI-Houtzdale Medical Department filed a motion to dismiss, which was granted. (ECF Nos. 25, 43.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

Plaintiff amended his complaint to assert claims against Dr. Naji and three Jane Does. (ECF No. 44) to which Dr. Naji filed an Answer. (ECF No. 47.) Plaintiff then filed a Second Amended Complaint against Dr. Naji and RN Kirk Rollan, no longer naming the Jane Does.[2] (ECF No. 68) Dr. Naji filed an Answer. (ECF No. 75.) RN Kirk Rollan's motion to dismiss was granted. (ECF Nos. 72, 82).

Dr. Naji's Motion for Summary Judgment was filed on May 18, 2026 (ECF No. 84) and has been fully briefed. (ECF Nos. 85, 86, 91, 92, 93.)

## II.    Factual Background

The relevant facts are undisputed. On Tuesday, February 8, 2022, Plaintiff walked to medical with a steady gait, complaining of spot on his right leg that had occurred overnight. (ECF No. 85 ¶ 2; ECF No. 93 ¶ 2.) Plaintiff was examined by RN Courtny Lowery. (*Id.*) Plaintiff denied experiencing pain but reported a burning sensation. (*Id.*) RN Lowery found the largest circular raised ecchymosis area was 3mm x 2mm in diameter. (*Id.*) RN Lowery encouraged Plaintiff to sign up for sick call to be examined by the physician's assistant and advised him to return if the areas broke open or increased in size. (*Id.*)

On Wednesday, February 9, 2022, PA Deanna Dellatorre saw Plaintiff at sick call. (ECF No. 85 ¶ 3; ECF No. 93 ¶ 3.) PA Dellatorre observed scattered petechiae on the lower extremities and black firm bullae ranging from the size of a quarter to a half-dollar with surrounding erythema. (*Id.*) Her assessment included rash and cellulitis. (*Id.*) She planned to have the physician evaluate Plaintiff. (*Id.*) She entered orders for Bactrim DC, twice daily for ten days. (*Id.*) She directed Plaintiff to follow up on the PA line on Friday or sooner via emergency services if necessary. (*Id.*)

---

[2] The Jane Does were terminated at that time.

RN Kirk Rollan[3] noted that on February 9, 2022, that corrections officers contacted medical about the same issues that were already addressed that day during a physician's assistant visit. Dr. Naji was called to see if any further treatment could be offered that night. Dr. Naji said Mr. Moorefield would be reassessed on Friday as scheduled. (ECF No. 85 ¶ 4; ECF No. 93 ¶ 4; ECF 84-2 at 172.)

On February 11, 2022, Plaintiff was assessed by RN Kenneth Dodson, Dr. Naji, and a PA. (ECF No. 85 ¶ 5; ECF No. 93 ¶ 5). Dr. Naji directed that Plaintiff be sent to the UMPC Altoona Emergency Room due to his complaints of pain with blisters and sores to his lower extremities. (*Id.*) Plaintiff was evaluated and treated at UPMC Altoona from February 11, 2022, until February 15, 2022. (ECF No. 85 ¶ 6; ECF No. 93 ¶ 6.) He was discharged with a diagnosis of leukocytoclastic vasculitis and ordered to continue Bactrim DC 800 mg twice daily. (*Id.*)

On or about March 4, 2022, Plaintiff submitted Grievance No. 970599. In this grievance, he stated that he was provided improper medical treatment for sores to his legs that developed on or about February 8, 2022. (ECF No. 85 ¶ 21; ECF No. 93 ¶ 21; ECF No. 84-3 at 5-6.) In the accompanying Initial Review Response, the Grievance Officer Radaker noted, "Dr. Naji was interviewed and states that Moorefield was started on an antibiotic for treatment of cellulitis, and it needed time to work. He states that on 2/11, the lesions had a different appearance, which necessitated transfer to the ER." (*Id.*) The final appeal decision upheld his grievance in part because  he experienced a delay in medical care following his initial evaluation. (ECF No. 84-3 at 1.) Plaintiff's grievance was denied in part because of a finding that monetary compensation was not warranted. (*Id.*)

---

[3] Rollan was previously dismissed as a defendant in this action (ECF No 82.)

**III.    Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 Fed. Appx. 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 Fed. Appx. 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV.    Analysis

Plaintiff claims that Dr. Naji was deliberately indifferent to his serious medical needs because he failed to reevaluate Plaintiff's condition between February 9, 2022, and February 11, 2022, despite communications from corrections officers to the medical department about the progression of Plaintiff's condition. (ECF No. 91 at 8.)

To succeed on an Eighth Amendment denial of medical care claim, the plaintiff must demonstrate two things. First, he must make an objective showing that his medical needs were serious. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

> A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted). A medical need is also serious where the denial of treatment would result in the "unnecessary and

wanton infliction of pain," *Estelle*, 429 U.S. at 103, or a "life-long handicap or permanent loss," *Lanzaro*, 834 F.2d at 347.

*Atkinson v. Taylor*, 316 F.3d 257, 272 (3d Cir. 2003) (parallel citations omitted).

Defendants do not address this issue, but based on the record, the Court concludes that Plaintiff had a serious medical need.

Second, Plaintiff must make a subjective showing that the defendant at issue was deliberately indifferent to his serious medical need. *See*, *e.g.*, *Rouse,* 182 F.3d at 197. The Supreme Court has described the state of mind that deliberate indifference requires:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement *unless the official knowns of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw that inference.*

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

"[D]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson*, 850 F.3d at 535. It has been found "in a variety of circumstances," *Rouse*, 182 F.3d at 197, including where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it[,]" or "prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), which cited *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987)). Since a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the *Farmer* standard does not require a defendant to admit his consciousness of the risk of serious harm before liability can be imposed. But even gross errors of judgment are not constitutional violations: liability requires subjective, not objective, culpability. 511 U.S. at 843 n.8.

6

Importantly, the subjective inquiry that must be made in determining whether deliberate indifference exists is meant "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The Court of Appeals has explained:

> It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the *Estelle* Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105; *see also Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("[C]ertainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.") (emphasis omitted). "Deliberate indifference," therefore, requires "obduracy and wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

*Rouse*, 182 F.3d at 197 (parallel citations omitted); *see, e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation."). Thus, "the mere receipt of inadequate medical care does not itself amount to deliberate indifference—the defendant must also act with the requisite state of mind when providing that inadequate care." *Pearson*, 850 F.3d at 535.

Moreover, when it comes to claims of deliberate indifference, there is a "critical distinction" between allegations of a delay or denial of a recognized need for medical care and allegations of inadequate medical treatment. *Id.* (citation omitted).

> Because "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation," *Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d. Cir. 1987), when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional

7

standards of care. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

*Id.*

That said, the fact that prison medical personnel have provided some medical care to an inmate does not preclude a finding of deliberate indifference. Even so, the court "must examine the totality of an inmate's care when considering whether that care evidences deliberate indifference to his serious medical needs." *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). As courts have concluded, isolated delays or incidents of neglect will not support a finding of deliberate indifference if the record evidences that the prison otherwise has been treating an inmate's painful condition. *Id.*

Here, it is undisputed that Plaintiff saw a nurse on February 8, 2022 based on his complaint of a spot on his leg. He was advised to sign up for sick call and was seen by a physician's assistant the next day. The PA planned to have a physician evaluate Plaintiff and prescribed Bactrim DC twice daily for ten days. She directed Plaintiff to follow up on February 11, 2022, or sooner if necessary. Dr. Naji was contacted on the evening of February 9 by Nurse Rollan based on communications from correctional officers about Plaintiff's complaints that his condition appeared to be worsening. Based on the information provided, Dr. Naji determined that no further treatment was necessary before Plaintiff's scheduled assessment on February 11, 2022. On February 11, 2022, Dr. Naji examined Plaintiff and determined that his condition required hospitalization.

Reviewing the totality of the evidence, the Court finds no evidence of Dr. Naji's deliberate indifference to Plaintiff's medical needs. While the DOC concluded that there was a delay in Plaintiff's medical care, the facts here do not support a claim that the delay was occasioned by deliberate indifference to Plaintiff's medical needs. Dr. Naji knew Plaintiff had been seen by the medical department on February 9, 2022, that medication was prescribed that day to treat his

condition, and that Plaintiff was scheduled to be seen again on February 11, 2022. Based on the information available to him, including the fact that Plaintiff had been examined earlier that day and provided with medical treatment and medication, Dr. Naji concluded that no further medical intervention was necessary before Plaintiff was scheduled to be examined on February 11th. There is no record evidence, nor can an inference can be drawn, that Dr. Naji knew of an immediate need for additional treatment and intentionally denied it. While Dr. Naji's decision to forgo additional medical treatment in the interim between medical visits could potentially be challenged, claims of negligence or medical malpractice do not constitute deliberate indifference without some evidence of a culpable state of mind.

Dr. Naji's exercise of his professional medical judgment, without some more culpable state of mind, does not constitute deliberate indifference. Dr. Naji's motion for summary judgment will be granted.

An appropriate Order follows.

Date:   July 30, 2026                                  /s/ Patricia L. Dodge
                                                       PATRICIA L. DODGE
                                                       UNITED STATES MAGISTRATE JUDGE

9